IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELAVON, INC.<br><br>Plaintiff,<br><br>v.<br><br>SILVERTOWN OF NY INC., ESTER WERZBERGER, CHAN FRIEDMAN, JOHN DOES 1-10 and ABC COMPANIES 1-10,<br><br>Defendants. | Civil Action No.: 1:20-cv-00908<br><br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Elavon, Inc. ("Elavon"), by and through its undersigned counsel, as and for its Complaint against defendant Silvertown of NY Inc. ("Silvertown"), Chan Friedman ("Friedman"), Ester Werzberger ("Werzberger" and, with Friedman and Silvertown, the "Silvertown Defendants"), John Does 1-10 (the "Doe Defendants") and ABC Companies 1-10 (the "ABC Defendants") (collectively, the "Defendants") alleges as follows:

## NATURE OF THE ACTION

1.  This is an action for damages arising from the Silvertown Defendants' breach of contract and breach of guaranty concerning credit card processing services, as well as the Defendants' collective criminal enterprise and conspiracy to defraud Elavon of millions of dollars.

## THE PARTIES

2.  At all relevant times herein, Elavon was, and remains, a corporation duly organized and existing pursuant to the laws of the State of Georgia and authorized to transact business within the State of New York.

3. At all relevant times herein, Elavon was, and remains, a wholly-owned subsidiary of U.S. Bank National Association, a federally-chartered banking institution.

4. Upon information and belief, defendant Silvertown is a corporation organized and formerly existing pursuant to the laws of the State of New York, located in Brooklyn, Kings County. Silvertown is a merchant engaged in the sale and manufacture of silver goods.

5. Silvertown was dissolved by proclamation by the State of New York on or about October 26, 2016.

6. At all relevant times herein, Silvertown engaged in, and/or its activities affected, interstate or foreign commerce because, *inter alia*, it shipped and received products traveling in interstate and/or foreign commerce and accepted credit cards issued by out-of-state and national banks.

7. Upon information and belief, defendant Friedman is an individual residing in the State of New York, in or about Kings County.

8. Silvertown lists Friedman as its Chief Executive Officer according to New York State records.

9. Upon information and belief, defendant Werzberger is an individual residing in the State of New Jersey, in or about Ocean County.

10. Silvertown purported to Elavon that Werzberger owns 100% of Silvertown.

11. Upon information and belief, at all relevant times mentioned herein, each Defendant was the agent, servant and/or employee of each of the remaining Defendants and at all times alleged herein was acting within the course and scope of said agency and/or employment.

12. Elavon is currently without knowledge and information of the true names and capacities of the Doe Defendants, and therefore sues these defendants by such fictitious names. Elavon reserves all rights to seek leave of the Court to amend this pleading to allege their true names and capacities when ascertained.

13. Elavon is currently without knowledge and information of the true names and status of the entities named as the ABC Companies, and therefore sues these defendants by such fictitious names. Elavon reserves all rights to seek leave of the Court to amend this pleading to allege their true names and capacities when ascertained.

## SUBJECT MATTER JURISDICTION

14. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Elavon and Defendants are each citizens of different States, namely Georgia (Elavon) and New York and New Jersey (Defendants), and the amount in controversy exceeds $75,000 exclusive of interest and costs.

15. Elavon requests that the Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims that are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy pursuant to Article III of the United States Constitution.

## VENUE

16. Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in the Eastern District of New York because at least one defendant maintains its principal place of business in Kings County, New York, and others reside in Kings County, New York.

17. Alternatively, venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

**A.    Elavon And Silvertown Enter Into A Contract For Credit Card Processing**

18. Elavon and Silvertown entered into a written contract incorporating by reference a Terms of Service and a Merchant Operating Guide (collectively hereinafter, the "Contract"). A true and correct copy of the Contract is annexed hereto as Exhibit 1. Silvertown signed the Contract on July 22, 2010.

19. The purpose of the Contract was to establish a relationship between Elavon and Silvertown pursuant to which Elavon would act as Silvertown's credit card processor. Elavon's services would permit Silvertown to accept credit cards as payment for the sale of its merchandise.

20. At all times relevant herein, Elavon fully performed, or was excused from performing, all of the conditions of the Contract it was required to perform.

21. Elavon provided Silvertown with merchant access into the VISA, MasterCard, American Express and Discover payment networks pursuant to the Contract.

22. Pursuant to the terms of the Contract, Silvertown was obligated to reimburse Elavon for customer chargebacks.

23. A "chargeback," more commonly known as a credit card "dispute," is a reversal of a transaction between a merchant and a customer credit cardholder. Chargebacks typically occur because of a customer's dissatisfaction with the goods or services provided by a merchant.

24. If substantiated, a chargeback results in a credit card processor, like Elavon, reimbursing the customer's credit card-issuing bank the amount of a disputed transaction. The card-issuing bank will then post a credit to the cardholder's balance.

25. Silvertown has breached the terms of the Contract with Elavon as set forth below.

**B.    Elavon Bore Full Pecuniary Responsibility For Silvertown's Chargebacks**

26. Pursuant to VISA, MasterCard and American Express regulations for transaction acquirers (the "Regulations"), Elavon was required to refund card issuing banks and the involved cardholders the amount of the presented chargebacks regardless of whether Silvertown maintained sufficient reserves for Elavon to recoup for itself the amount of the refunds and regardless of whether or not the card issuing bank and the cardholder were ultimately successful in the presentation of the disputed transaction.

27. The Regulations are publicly available, and the Silvertown Defendants were familiar with them.

28. Between August 2015 and September 2016, Elavon was presented with numerous chargebacks to Silvertown's account. The chargebacks resulted in Elavon reimbursing card issuing banks nearly $1 million.

29. Prior to the commencement of this action, Elavon demanded that Silvertown repay the amount of $1,024,041.02. This sum was due and owing pursuant to the Contract's requirement that Silvertown reimburse Elavon for chargebacks paid out on Silvertown's behalf by Elavon.

30. No part of said sum has been paid, and there is now due, owing and unpaid from Silvertown to Elavon the above-referenced amount, together with interest thereon at the legal rate from the date of breach.

31. The Contract also provides for payment of costs and of attorney fees for any cause of action arising thereunder. Such costs and fees are due and owing in a sum to be proven at the time of trial.

C. **Elavon And Werzberger Enter Into A Guaranty Agreement**

32. To induce Elavon to furnish the above-described services to Silvertown, defendant Werzberger, purporting to be Silvertown's sole owner, individually subscribed to a Personal Guaranty (the "Guaranty"), whereby she guaranteed payment of any sums due and owing by Silvertown to Elavon on account of the Contract. The Guaranty was an included material element of the Contract. (*See* Exhibit 1 hereto).

33. Demand has been made upon Werzberger, as Silvertown's guarantor, to pay the amount due and owing, but payment has not been made. By reason of this breach, Werzberger is indebted to Elavon in the sum of $1,024,041.02, together with interest thereon at the legal rate from the date of the breach.

34. The Contract also provides for payment of costs and of attorney fees, for any cause of action arising thereunder. Such costs and fees are due and owing in a sum to be proven at the time of trial.

D. **The Silvertown Defendants Engaged In A Fraudulent Scheme To Present Elavon Sham Transactions For Pecuniary Gain**

35. According to Silvertown's July 22, 2010 application to Elavon, it expected its monthly credit card sales to be approximately $25,000. (Exhibit 1).

36. Beginning in November 2012, however, Silvertown's credit card sales began to increase significantly. With the exception of two months, Silvertown's credit card sales volume exceeded $100,000 during every month between November 2012 and July 2015.

37. Many of the transactions Silvertown submitted to Elavon beginning in November 2012 were fraudulent in that they did not represent bona fide exchanges of payment for goods or services. In these transactions, Silvertown did not agree to provide any goods or services to "customers" presenting their credit cards to Silvertown for payment, and the "customers" did not expect Silvertown to provide them with any goods or services.

38. The non-bona fide transactions in which neither Silvertown nor the "customers" expected to provide or receive, respectively, goods or services are referred to herein as the "Sham Transactions."

39. The non-bona fide customers who permitted their credit cards to be charged various amounts are referred to herein as the "Sham Customers."

40. At all times described herein, each of the Silvertown Defendants were aware that the Sham Customers were providing their credit cards to Silvertown to participate in the Sham Transactions.

41. Silvertown used the proceeds of the Sham Transactions for purposes yet unknown, but could have included, for example, short term loans.

42. The Sham Transactions resulted in debts owed by the Sham Customers to their credit card issuing banks.

43. To further the scheme, one or more of the Silvertown Defendants periodically transferred funds to the Sham Customers to reimburse them for the Sham Transactions. The Sham

7

Customers used these funds to pay down their debts to the credit card issuing banks resulting from the Sham Transactions.

44. Funds derived from later Sham Transactions were used to pay down the debt incurred through earlier Sham Transactions, so that a constant stream of Sham Transactions was necessary to pay down the Sham Customers' credit card debts.

45. The Silvertown Defendants and the Sham Customers were aware of each other's respective identities and roles in the scheme, including the requirement of a constant stream of funds derived from Sham Transactions necessary to maintain the scheme.

46. The Silvertown Defendants and the Sham Customers relied on each other to continue participating in Sham Transactions to further their scheme.

47. The Silvertown Defendants or others informed the Sham Customers, and in particular the Doe Defendants and the ABC Defendants, of the Regulations. Specifically, the Silvertown Defendants or others informed the Sham Customers that if ever the Silvertown Defendants were unable to provide funds to them sufficient to pay down the debt they incurred through the Sham Transactions, they could initiate chargebacks and the Regulations required Elavon to reimburse them.

48. This knowledge was necessary to assure the Sham Customers that the funds they paid to Silvertown through the Sham Transactions would be secure even if the Silvertown Defendants were unable to reimburse them for their respective Sham Transactions.

49. Communications by and among the Silvertown Defendants and the Sham Customers in furtherance of their scheme took place by way of the mail and/or interstate wire.

### E. The Fraudulent Scheme Ends

50. Beginning on or about August 3, 2015 and continuing through September 21, 2016, Silvertown's account with Elavon became the subject of approximately 95 chargebacks of various amounts (the "Subject Chargebacks"). The specific dates and amounts of the Subject Chargebacks are detailed in Exhibit 2 hereto and amount to over $1 million.

51. The Subject Chargebacks were all predicated on Sham Transactions.

52. The Subject Chargebacks were initiated by Sham Customers whose identities are at present unknown, but who are identified herein as the Doe Defendants and the ABC Defendants.

53. The Regulations state that a credit card holder must initiate a chargeback by contacting his or her credit card issuing bank and affirming non-receipt of the promised goods or services.

54. Upon receiving a report of a disputed transaction from its customer, the credit card issuing bank will transmit the chargeback statement using either the Visa, MasterCard or American Express electronic communications system, as appropriate, to the merchant's credit card processor, which transmits it to the merchant for validation and response. At this point, the burden shifts to the merchant either to accept the chargeback or provide facts showing that the credit card holder did receive the goods and/or services paid for.

55. In the event that the merchant accepts the chargeback or its defense to the credit card holder's dispute is found to be insufficient, the chargeback will be confirmed, and the amount of the disputed transaction will be deducted from the credit card processor. As described above, the Regulations dictate that the credit card processor bears pecuniary responsibility for the

chargeback amount even if the amount exceeds the balance of a merchant's account with the credit card processor.

56. On or about the dates specified in Exhibit 2, using their knowledge of the Regulations, the Doe Defendants and ABC Defendants contacted their credit card issuing banks and stated to them that Silvertown had failed to provide the goods or services purchased in Sham Transactions. As a result, the Doe Defendants and ABC Defendants requested the issuing banks to initiate the Subject Chargebacks.

57. The statements of the Doe Defendants and ABC Defendants to their credit card issuing banks were false because the Doe Defendants and ABC Defendants did not expect to receive any goods or services from Silvertown and there was no basis for them to initiate the Subject Chargebacks.

58. Had the Doe Defendants and ABC Defendants truthfully explained to their card issuing banks that they sought to initiate chargebacks in relation to transactions for which they did not expect to receive goods or services, the issuing banks would have refused to initiate the Subject Chargebacks.

59. The Doe Defendants and ABC Defendants' purpose in initiating the Subject Chargebacks was to compensate themselves for the debt incurred pursuant to Sham Transactions.

60. Perforce of their knowledge of the Regulations, the Doe Defendants and ABC Defendants intended, knew and expected that the credit card issuing banks would forward the Subject Chargebacks to Elavon, and knew that such communication was an intrinsic aspect of being compensated for the Sham Transactions.

61. Upon receipt of the Subject Chargebacks from the credit card issuing banks, Elavon forwarded them to Silvertown and requested that it advise its position as to the Subject Chargebacks.

62. Silvertown failed to respond to Elavon.

63. In reliance on the communications from the Doe Defendants and ABC Defendants, Elavon processed the Subject Transactions and returned to those parties the amounts of the Subject Chargebacks.

## COUNT ONE
## Breach of Contract Against Silvertown

64. Elavon repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth at length herein.

65. Elavon and Silvertown entered into the Contract for the purpose of Elavon becoming Silvertown's credit card processor.

66. Silvertown breached its contract with Elavon by failing to compensate it for the Subject Chargebacks presented against its card processing account, as well as associated chargeback fees provided for in the Contract.

67. Elavon has complied with its contractual obligations to Silvertown, or has been properly excused therefrom.

68. As a result of Silvertown's breach of contract, Elavon has been damaged.

WHEREFORE, Elavon prays for judgment against Silvertown for:

    i. Compensatory damages;

    ii. Attorney's fees pursuant to the Contract;

    iii. Interest and costs of this action; and

iv. Such other and further relief as the Court may deem just and proper.

## COUNT TWO
### Breach of Guaranty Against Werzberger

69. Elavon repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth at length herein.

70. Werzberger induced Elavon to enter into the Contract by personally guaranteeing repayment of Silvertown's debts arising from breach of the Contract by Silvertown.

71. Elavon has demanded that Werzberger pay the amount due and owing from Silvertown to Elavon, but Werzberger has refused.

72. As a result of Werzberger's failure to abide by the guaranty, Elavon has been damaged.

WHEREFORE, Elavon prays for judgment against Werzberger for:

i. Compensatory damages;

ii. Attorney's fees pursuant to the Contract;

iii. Interest and costs of this action; and

iv. Such other and further relief as the Court may deem just and proper.

## COUNT THREE
### N.Y. Business Corporation Law § 1006(b)
### Against Werzberger, Friedman and Doe Defendants

73. Elavon repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth at length herein.

74. The State of New York dissolved Silvertown by proclamation on or about October 26, 2016.

75. Prior to its dissolution, Werzberger, Friedman and any other shareholders, directors and/or officers of Silvertown did not adjust Silvertown's affairs pursuant to Article 10 of the New York Business Corporation Law.

76. As a result, any of Silvertown's shareholders, directors and/or officers, including Werzberger and Friedman, may be held liable for Silvertown's liabilities.

WHEREFORE, Elavon prays for judgment against Werzberger, Friedman and the Doe Defendants for:

    i. Compensatory damages;

    ii. Attorney's fees pursuant to the Contract;

    iii. Interest and costs of this action; and

    iv. Such other and further relief as the Court may deem just and proper.

## COUNT FOUR
### Fraud Against The Doe Defendants And ABC Defendants

77. Elavon repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth at length herein.

78. On or about the dates set forth in Exhibit 2, the Doe Defendants and ABC Defendants contacted their card issuing banks and falsely stated to them that they had not received goods or services from Silvertown. These statements were false because the Doe Defendants and ABC Defendants permitted Silvertown to charge their credit cards for non-bona fide transactions and did not expect to receive goods or services from Silvertown.

79. The purpose of the false representations to the card issuing banks was to obtain funds from Elavon pursuant to the chargeback process to which the Doe Defendants and ABC Defendants were not entitled.

80. The Doe Defendants and ABC Defendants knew that their representations were false when they made them because they knew that they never expected to receive any goods or services from Silvertown.

81. Based on their knowledge of the Regulations, the Doe Defendants and ABC Defendants intended, knew and expected that the card issuing banks would transmit the Subject Chargebacks to Elavon for processing.

82. The Doe Defendants and ABC Defendants made their misrepresentations for the purpose of inducing Elavon's reliance on them because Elavon's reliance was necessary for it to process the Subject Chargebacks and issue refunds to the Doe Defendants and ABC Defendants' card issuing banks.

83. Elavon relied on the Subject Chargebacks and reimbursed the Doe Defendants and ABC Defendants' card issuing banks the amounts of the Subject Chargebacks.  In turn, the issuing banks credited the Doe Defendants and ABC Defendants' accounts, which resulted in the issuing banks extinguishing those parties' debts arising from the Sham Transactions.

84. Elavon was injured by reason of the Doe Defendants and ABC Defendants' misrepresentations.

85. The Doe Defendants and ABC Defendants' fraudulent acts demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Elavon to recover punitive damages.

WHEREFORE, Elavon prays for judgment against the Doe Defendants and ABC Defendants for:

    iv.    Compensatory damages;

    ii.    Punitive damages;

iii. Interest and costs of this action; and

iv. Such other and further relief as the Court may deem just and proper.

## COUNT FIVE
### Unjust Enrichment Against The Defendants

86. Elavon repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth at length herein.

87. Elavon's reimbursement of the amounts of the Subject Chargebacks conferred a significant benefit upon the Defendants because the reimbursement extinguished the parties' debts to each other and their card issuing banks.

88. The Defendants received a benefit to which they were not entitled. The Silvertown Defendants received the benefit of retaining the proceeds of the credit card transactions and having their debts to the Doe Defendants and ABC Defendants extinguished. The Doe Defendants and ABC Defendants received the benefit of having their debts to the credit card-issuing banks extinguished.

89. The Defendants would be unjustly enriched if they are not obligated to compensate Elavon.

WHEREFORE, Elavon prays for judgment against the Defendants for:

i. Compensatory damages;

ii. Interest and costs of this action; and

iii. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Elavon respectfully requests a trial by jury of all issues so triable.

Dated: February 15, 2020

**THE GINZBURG LAW FIRM, P.C.**

By: */s/ Daniel Ginzburg*
Daniel Ginzburg (DG-2824)
<u>Mailing Address</u>
151 Highway 516, Unit 736
Old Bridge, New Jersey 08857
Tel: (732) 284-3841
daniel@ginzburglawfirm.com
*Counsel to Plaintiff Elavon, Inc.*