UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

ELAVON, INC.,

                Plaintiff,

        v.

ERWIN GANZFRIED, JOSEPH KATZ, JOSEPH
MERING, SHLOMO KORNHAUSER,
DEVORAH MERING, MORDECHAI KOHN,
MORDECHAI LEVI, NAFTULI
MORGENSTERN, JUDY BERGER, SARAH T.
LEVI, SHLOMO BERGER, SOLOMON LEVY,
SUSSMAN BLEIER, and ASHER JUNGREISZ,

                Defendants.

**MEMORANDUM & ORDER**
20-CV-908 (MKB)

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

    Plaintiff Elavon, Inc., commenced the above-captioned action against Defendants Silvertown of NY, Inc. ("Silvertown"), Ester Werzberger, Chan Friedman, John Does 1–10, and ABC Companies 1–10 on February 20, 2020, and filed an Amended Complaint on October 11, 2021, against Defendants Erwin Ganzfried, Joseph Katz, Joseph Mering, Shlomo Kornhauser, Devorah Mering, Mordechai Kohn, Mordechai Levi, Naftuli Morgenstern, Judy Berger, Sarah T. Levi, Shlomo Berger, Solomon Levy, Sussman Bleier, and Asher Jungreisz.[1] (Compl., Docket

---

[1] Plaintiff initially filed an Amended Complaint on July 10, 2021, in which Plaintiff mistakenly named Defendant Judy Berger as "Sara Berger" and misspelled "Mordechai Levi" as "Mordechai Levy." (Am. Compl., Docket Entry No. 42.) Plaintiff refiled the Amended Complaint on July 16, 2021, adding allegations against previously named Defendant Solomon Levy. (First Corrected Am. Compl. ¶¶ 98–104, 156–63, Docket Entry No. 45.) Plaintiff refiled the Amended Complaint a third time on October 11, 2021, renaming Defendant Sarah Berger as "Judy Berger" with consent of counsel and changing "Mordechai Levy" to "Mordechai Levi" in the caption and body of the pleading. (Consent Notice of Errata as to the Am. Compl., Docket Entry No. 61; Second Corrected Am. Compl., Docket Entry No. 61-1.) For purposes of this

Entry No. 1; Second Corrected Am. Compl. ("Am. Compl."), Docket Entry No. 61-1.) Plaintiff alleges that Defendants participated in a short-term lending scheme by allowing Silvertown to charge their credit cards without providing goods or services and making misrepresentations to their credit card issuing banks in order to receive reimbursements from Plaintiff, thereby committing fraud, (Am. Compl. ¶¶ 164–73), unjust enrichment, (*id.* ¶¶ 174–77), and conspiracy, (*id.* ¶¶ 178–82). Defendants Joseph Katz, Joseph Mering, Schlomo Kornhauser, Devorah Mering, Mordechai Kohn, Mordechai Levi, Naftuli Morgenstern, Judy Berger, Sarah Levi, and Shlomo Berger (collectively, the "Moving Defendants") move to dismiss the Amended Complaint against them for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, as time-barred under the applicable statutes of limitation, and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; Plaintiff opposes the motion.[2]

For the reasons set forth below, the Court grants the Moving Defendants' motion.

## I. Background

The Court assumes the truth of the factual allegations in the Amended Complaint for the purpose of deciding the Moving Defendants' motion.

### a. Plaintiff's contract for credit card processing

Plaintiff is a corporation organized and existing under Georgia law and headquartered in Tennessee. (Am. Compl. ¶ 2.) On July 22, 2010, Plaintiff entered into a contract with non-party

---

Memorandum and Order, the Court relies on the Second Corrected Amended Complaint ("Am. Compl.").

[2] (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 68; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), annexed to Defs.' Mot., Docket Entry No. 68-1; Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 70; Defs.' Reply Mem. in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 69.)

Silvertown, a silver store, by which Plaintiff "would act as Silvertown's credit card processor," which would allow Silvertown "to accept credit cards as payment for the sale of its merchandise." (*Id.* ¶¶ 11–13.) Under the Contract, Silvertown was obligated to reimburse Plaintiff for customer "chargebacks," which are "reversal[s] of a transaction between a merchant and a customer" that "typically occur because of a customer's dissatisfaction with the goods or services provided by a merchant." (*Id.* ¶¶ 15–16.) However, pursuant to "the rules and regulations promulgated by Visa, Mastercard, Discover[,] and American Express concerning credit card processing and chargeback procedures" (the "Processing Rules"), "credit card processors like [Plaintiff] bear the responsibility of reimbursing credit cardholders for chargebacks regardless of whether the processors themselves are able to obtain reimbursement from their merchant customers" like Silvertown. (*Id.* ¶¶ 33, 18.)

        b.    **Scheme to use credit cards as a form of lending**

"According to Silvertown's July 22, 2010 application to [Plaintiff], it expected its monthly credit card sales to be approximately $25,000." (*Id.* ¶ 19.) However, by June of 2015, "Silvertown was processing $715,000 worth of transactions per month." (*Id.* ¶ 20.) Plaintiff alleges that many, if not all, of the credit card transactions were "sham transactions" in that they "did not represent bona fide exchanges of payments for goods or services." (*Id.* ¶¶ 21–22.) Under the scheme, Silvertown charged various amounts to Defendants' credit cards, resulting in Defendants owing debts to their credit card issuing banks, (*id.* ¶¶ 23, 25), and promised Defendants it would either repay the debts directly to their card-issuing banks or transfer funds to Defendants so that they could pay the debts themselves, (*id.* ¶ 26). In effect, these transactions were "loans" made by Defendants to Silvertown, (*id.* ¶ 24), but Silvertown "did not have sufficient revenue" to reimburse Defendants, and, therefore, "charged other credit cards

belonging to the same or different [Defendants] to obtain sufficient funds for its reimbursement obligations," (*id.* ¶ 27). "Funds derived from later [s]ham [t]ransactions were used to pay down the debt incurred through earlier [s]ham [t]ransactions, so that a constant stream of increasing [s]ham [t]ransactions was necessary to pay down the credit card debts." (*Id.* ¶ 28.) However, "[t]his state of events was untenable." (*Id.* ¶ 29.)

      **c.   The end of the lending scheme and shift of the debt to Plaintiff**

Eventually, "Silvertown informed the [s]ham [c]ustomers, including . . . Defendants, that it would no longer process credit card transactions and, therefore, [would] be unable to repay their debts" or "provide funds to them." (*Id.* ¶ 30.) "Without Silvertown's transfers of funds," Defendants would be "left with sizable debts due and owing to their credit card-issuing banks that they would be required to repay using their own funds." (*Id.* ¶ 31.) But "[i]nstead of using their own funds," Defendants and Silvertown "worked to shift their debt" onto Plaintiff with the help of non-party TransMedia Payment Services, Ltd. ("TransMedia"), which "touts itself as 'a credit card chargeback loss prevention firm that works with merchants, to help them win chargebacks.'" (*Id.* ¶¶ 32–33.) "[W]ith TransMedia's help, Silvertown and the Defendants were able to review and understand [the publicly available Processing Rules] in sufficient detail," and Plaintiff was ultimately required to "reimburs[e] Defendants' card-issuing banks over $1 million." (*Id.* ¶¶ 37–38.) "In turn, the card-issuing banks used [Plaintiff's] funds to satisfy the debts" Defendants owed them, and "Silvertown did not have sufficient amounts in its account to compensate [Plaintiff]." (*Id.* ¶¶ 39, 38.)

      **d.   Fraudulent scheme to present Plaintiff sham transactions for pecuniary gain**

"Beginning on or about August 3, 2015 and continuing through September 21, 2016, Silvertown's account with [Plaintiff] became the subject of approximately [ninety-two]

chargebacks of various amounts" (the "Subject Chargebacks") "predicated on [s]ham [t]ransactions." (*Id.* ¶¶ 40–41.) "The Processing Rules state that a credit card holder must initiate a chargeback by contacting his or her credit card-issuing bank and affirming non-receipt of the promised goods or services." (*Id.* ¶ 42.) "Upon receiving a report of a disputed transaction from its customer, the credit card-issuing bank will transmit the chargeback statement . . . to the merchant's credit card processor, which transmits it to the merchant for a response," at which point "the burden shifts to the merchant either to accept the chargeback or provide facts showing that the credit card holder did receive the goods and/or services paid for." (*Id.* ¶ 43.) At the same time, "the credit card holder will receive a provisional credit for the amount of the chargeback." (*Id.*) "In the event that the merchant accepts the chargeback, its defense to the credit card holder's dispute is found to be insufficient, or the merchant fails to respond, the chargeback will be confirmed and the formerly provisional credit to the card holder will become permanent." (*Id.* ¶ 44.) The Processing Rules "dictate that the credit card processor bears pecuniary responsibility for the chargeback amount even if the amount exceeds the balance of a merchant's account with the credit card processor." (*Id.*)

"[U]sing their knowledge of the Processing Rules, the Defendants contacted their credit card-issuing banks and stated to them that Silvertown had failed to provide the goods or services purchased in [s]ham [t]ransactions." (*Id.* ¶ 45.) However, "[t]hese representations were false because the Defendants never intended to purchase goods or services from Silvertown," (*id.*), but "Defendants requested that the issuing banks initiate the [s]ubject [c]hargebacks," (*id.*; *see also id.* ¶¶ 46–163 (setting forth allegations as to each Defendant).) Plaintiff brings claims of fraud, (*id.* ¶¶ 164–73), unjust enrichment, (*id.* ¶¶ 174–77), and conspiracy against Defendants, (*id.* ¶¶ 178–82), based on Plaintiff having to reimburse Defendants' card-issuing banks over $1 million,

and seeks compensatory damages, punitive damages, and interest and costs of this action, (*id.* ¶¶ 173, 177, 182).

## II. Discussion

### a. Standards of review

#### i. Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it." *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova*, 201 F.3d at 113); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "'[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted) (first quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247 (2010). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113); *see also Suarez v. Mosaic Sales Sols. US Operating Co.*, 720 F. App'x 52, 53 (2d Cir. 2018) (citing *Morrison*, 547 F.3d at 170); *Clayton v. United States*, No. 18-CV-5867, 2020 WL 1545542, at *3 (E.D.N.Y. Mar. 31, 2020) (quoting *Tandon*, 752 F.3d

at 243); *Fed. Deposit Ins. Corp. v. Bank of N.Y. Mellon*, 369 F. Supp. 3d 547, 552 (S.D.N.Y. 2019) (quoting *Tandon*, 752 F.3d at 243).

### ii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

### b. The Court has subject matter jurisdiction over the claims against the Moving Defendants

The Moving Defendants argue that the Court lacks subject matter jurisdiction over the claims against eight of the Moving Defendants — namely, Joseph Katz, Devorah Mering, Mordechai Kohn, Mordechai Levi, Naftuli Morgenstern, Judy Berger, Sarah Levi, and Shlomo Berger, but not Joseph Mering and Shlomo Kornhauser[3] — "because the amount in controversy

---

[3] The Moving Defendants' counsel notes that while it "does not currently represent Sussman Bleier, Asher Jungreisz, or Solomon Levy" and "is making no motion on their behalf,"

with respect to each of those claims is less than the $75,000 required under 28 U.S.C. § 1332." (Defs.' Mem. 5.) In support, the Moving Defendants argue that "[i]t is blackletter law that a plaintiff's claims against multiple separate defendants cannot be aggregated for purposes of the jurisdictional amount in controversy if the defendants' liability is several, not joint," and Plaintiff's allegations "against each individual Defendant are independent of one another and in no way give rise to any joint liability." (*Id.* at 6.)

Plaintiff argues that (1) the Court has diversity jurisdiction over the claims against Erwin Ganzfried, Joseph Mering, and Shlomo Kornhauser and should exercise supplemental jurisdiction over the claims against the remaining Defendants because they "are so factually and legally related to the claims within the Court's original jurisdiction that they form part of the same case or controversy," (Pl.'s Opp'n 4–6); and (2) even if the Court chooses not to exercise supplemental jurisdiction, "it may aggregate the claims against the eleven [Moving Defendants] with less than $75,000 in chargebacks because [Plaintiff's] claims seek to establish joint and several liability," (*id.* at 6–8).

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented. *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). "In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that 'aris[e] under' federal law, § 1331, and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties, § 1332(a)." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. ---, ---, 139 S. Ct. 1743, 1746 (2019) (alteration in original). Under the diversity jurisdiction statute, all

---

there is no subject matter jurisdiction over the claims against these non-moving Defendants for the same reasons. (Def.'s Mem. 8 n.2.)

plaintiffs and all defendants must be of diverse citizenship. 28 U.S.C. § 1332(a); *see also Bartlett v. Honeywell Int'l Inc.*, 737 F. App'x 543, 547 (2d Cir. 2018) ("Diversity jurisdiction is present when there is complete diversity between the parties . . . ." (citing 28 U.S.C. § 1332(a))); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' *i.e.*[,] all plaintiffs must be citizens of states diverse from those of all defendants." (footnote omitted) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005))). In addition, "[f]ederal diversity jurisdiction requires an amount in controversy of at least $75,000 . . . [and] this amount is measured as of the time that a complaint is filed," *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 154–55 (D. Conn. 2016) (first citing 28 U.S.C. § 1332(a); and then citing *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005)), "and it is established by the face of the complaint and the dollar amount actually claimed," *id.* at 155 (first citing *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961); and then citing *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003)); *see also Hall*, 396 F.3d at 506 (noting that "[g]enerally, for purposes of diversity jurisdiction, the amount in controversy is established as of the date of the complaint and is not reevaluated based on post-filing events"). "[T]he party asserting subject matter jurisdiction[] has the burden of proving that it exists by a preponderance of the evidence." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 443 (2d Cir. 2019) (citing *Makarova*, 201 F.3d at 113); *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 814 n.5 (2d Cir. 2014) ("A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." (quoting *Scherer*, 347 F.3d at 397)); *see also Kruglov v. Copart of Conn., Inc.*, 771 F. App'x 117, 118 (2d Cir. 2019) (same). The amount in

controversy must be non-speculative in order to satisfy the statute, and conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient. *See Valente v. Garrison from Harrison LLC*, No. 15-CV-6522, 2016 WL 126375, at *2 (E.D.N.Y. Jan. 11, 2016) ("[B]oilerplate pleadings do not suffice to establish that [an] action involves an amount in controversy adequate to support federal diversity jurisdiction.").

"A plaintiff may satisfy th[e] jurisdictional minimum by aggregating claims against multiple defendants . . . when their liability is common, undivided, or joint." *Rubin v. Mangan*, No. 21-CV-1401, 2021 WL 5281347, at *3 (E.D.N.Y. Nov. 12, 2021) (quoting *Nastasi v. Lari*, No. 15-CV-6066, 2017 WL 943935, at *3 (E.D.N.Y. Mar. 9, 2017)); *Esmilla v. Cosmopolitan Club*, No. 09-CV-10169, 2011 WL 814007, at *4 (S.D.N.Y. Mar. 3, 2011) (citing *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 933–35 (2d Cir. 1998)). "Aggregation to achieve diversity jurisdiction is barred," however, "when the liability of the defendants is several and not joint." *E.R. Squibb & Sons, Inc.*, 160 F.3d at 933; *see also Nastasi*, 2017 WL 943935, at *3 ("By contrast, when [the] defendants' liabilities are several and distinct, the amount in controversy threshold must be met with respect to each and every individual defendant regardless of whether the claims are temporally proximate or factually interrelated."); *K. Bells & Assocs., Inc. v. Lloyd's Underwriters*, No. 92-CV-5249, 1998 WL 274346, at *5 (S.D.N.Y. 1998) ("It is well-established that aggregation of a plaintiff's claims against multiple defendants is impermissible unless [the] defendants' liability is joint, rather than several." (citing *Sovereign Camp, W.O.W. v. O'Neil*, 266 U.S. 292, 295 (1924))); *Chase Manhattan Bank, N.A. v. Aldridge*, 906 F. Supp. 870, 874 (S.D.N.Y. 1995) ("When liability among defendants is several, a plaintiff cannot aggregate its claims against individual defendants in order to satisfy the jurisdictional amount in controversy requirement of 28 U.S.C. § 1332. It must satisfy the

jurisdictional amount with respect to each defendant."). "As a result, each and every severally liable defendant must, in the normal course of things, meet the amount in controversy." *E.R. Squibb & Sons, Inc.*, 160 F.3d at 933. "A claim alleging 'joint and several liability' is one where any defendant can be liable to the plaintiff in two ways: (1) regardless of whether any other defendant is liable ('several' or individual liability) or (2) where the defendant acted in concert with each and every defendant ('joint' liability)." *Umala v. Skylight Holdings*, No. 20-CV-1176, 2021 WL 7908033, at *2 (E.D.N.Y. Feb. 3, 2021).

Allegations of civil conspiracy may provide the basis for joint liability. *See Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981) ("A conspiracy is alleged for the purpose of showing that a wrong was committed jointly by the conspirators and that, because of their common purpose and interest, the acts of one may be imputed to the others. The allegation 'is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts.'" (citation omitted) (quoting *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956))); *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, No. 10-CV-1762, 2013 WL 168079, at *3 (E.D.N.Y. Jan. 16, 2013). "To state a claim for civil conspiracy under New York law, a plaintiff, in addition to alleging an underlying tort, must plead facts sufficient to support an inference of the following elements: '(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.'" *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012) (quoting *Abacus Fed. Sav. Bank v. Lim*, 905 N.Y.S.2d 585, 588 (App. Div. 2010)). "Proof of a civil conspiracy under New York law 'connect[s] a defendant with the transaction and . . . charge[s] him with the acts and declarations of his co-conspirators,' and exposes that defendant to joint and several liability for the victim's

losses." *Kashi v. Gratsos*, 790 F.2d 1050, 1054 (2d Cir. 1986) (alteration in original) (quoting *Green v. Davies*, 182 N.Y. 499, 504 (1905)); *R.B. Dev., Co., Ltd. v. Tutis Cap. LLC*, 2018 U.S. Dist. LEXIS 196105, at *35 (E.D.N.Y. Nov. 14, 2018) ("Co-defendants found liable for civil conspiracy . . . are subject to joint and several liability for the underlying tort."), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 20909 (E.D.N.Y. Feb. 7, 2019).

The Court has subject matter jurisdiction over Defendants Joseph Katz, Devorah Mering, Mordechai Kohn, Mordechai Levi, Naftuli Morgenstern, Judy Berger, Sarah Levi, and Shlomo Berger. Plaintiff alleges that each of these Defendants initiated chargebacks that were less than $75,000. (Am. Compl. ¶ 55 (Joseph Katz, $16,854), ¶ 81 (Devorah Mering, $4,500), ¶ 90 (Mordechai Kohn, $9,000), ¶ 98 (Mordechai Levi, $8,000), ¶ 106 (Naftuli Morgenstern, $1,499), ¶ 114 (Judy Berger, $8,300), ¶ 122 (Sarah Levi, $10,000), ¶ 130 (Shlomo Berger, $60,816).) Plaintiff argues that Defendants are jointly and severally liable, and thus the claims against them may be aggregated to meet the amount in controversy requirement, because their participation in the lending scheme "involved them using each other's credit cards in *seriatim* fashion to keep the scheme afloat"; absent that cooperation, "the scheme could not have been possible"; and when the lending scheme came to an end, Defendants each relied on TransMedia's advice and made fraudulent statements to their credit card issuing banks to eliminate their debts resulting from the scheme. (Pl.'s Opp'n 7.) In support, Plaintiff points to its allegations that Silvertown charged additional customers' credit cards so that Silvertown could pay off other customers' debts. (*Id.* (citing Am. Compl. ¶¶ 27–28).) Plaintiff also alleges that "Defendants knowingly colluded and agreed to use each other's respective credit cards to pay down each other's recurring credit card debts," and that "[w]ithout the cooperation of all the Defendants and their continued permission

to use their respective credit cards to further their efforts, the scheme would not have been possible." (Am. Compl. ¶¶ 179–80.)

Plaintiff's conspiracy allegations are sufficient to establish joint liability for Plaintiff's underlying claims of fraud. Plaintiff alleges that Defendants "agreed to use each other's respective credit cards to pay down each other's recurring credit card debts," and, in furtherance of this scheme, "permit[ed] Silvertown to use one or more of each Defendant's credit cards in recurrent fashion to pay off debts of other Defendants." (*Id.* ¶¶ 180–81.) Initially, Silvertown promised Defendants it would either repay the debts directly to their card-issuing banks or transfer them funds so that they could pay the debts themselves. (*Id.* ¶ 26.) However, after the lending scheme became "untenable," (*id.* ¶ 29), Silvertown informed Defendants that it would be "unable to repay their debts" or "provide funds to them," (*id.* ¶ 30), and Defendants, "using suggestions by . . . TransMedia . . . and with Silvertown's assistance and cooperation, worked to shift their debt onto" Plaintiff through fraudulent chargebacks, (*id.* ¶ 32). Specifically, Plaintiff alleges that Defendants committed fraud by making material misrepresentations to their credit card issuing banks, resulting in the banks initiating the chargebacks, and that Plaintiff justifiably relied on Defendants' misrepresentations in reimbursing the banks, causing Plaintiff's injuries. Although Plaintiff alleges that each Defendant contacted their own credit card issuing bank and initiated the chargebacks for the charges they put on their respective credit cards, the Court understands these actions to be overt acts in furtherance of the ongoing conspiracy, as Plaintiff alleges Defendants collectively engaged with Silvertown and TransMedia for the purpose of shifting their debts to Plaintiff. As Plaintiff alleges, "[i]n the absence of the conspiracy and collusion by and among . . . Defendants, Silvertown and Defendants would have been unable to perpetrate the scheme complained of and [Plaintiff] would have avoided all or a significant

portion of the pecuniary damages it incurred as a result of the scheme." (*Id.* ¶ 182); *see Grove Press, Inc.*, 649 F.2d at 123 ("The damage for which recovery may be had in a civil action is not the conspiracy itself but the injury to the plaintiff produced by specific overt acts." (quoting *Rutkin*, 229 F.2d at 252)). Although ultimately discovery may show otherwise, at this stage of the proceeding, Plaintiff has plausibly alleged joint liability on the part of Defendants for the underlying claims of fraud. Accordingly, Plaintiff's fraud claims may be aggregated to meet the amount in controversy requirement against these Defendants, and the Court therefore exercises subject matter jurisdiction over them.[4]

### c. Plaintiff's fraud and unjust enrichment claims against the Moving Defendants are time-barred

The Moving Defendants argue that Plaintiff's claims are time-barred because they accrued more than four years before the Amended Complaint was filed, and, under New York's borrowing statute, Plaintiff's fraud claims "are subject to Georgia's four-year statute of limitations" or Tennessee's three-year statute of limitations, and Plaintiff's unjust enrichment claims "are subject to New York's three-year statute of limitations." (Defs.' Mem. 8–11, 11 n.4.)

Plaintiff argues that its claims are not time-barred because (1) its financials are "rolled up" into and reported by its parent company, U.S. Bank National Association ("U.S. Bank"), as part of U.S. Bank's financials "in accordance with applicable [Securities Exchange Commission]

---

[4] Plaintiff alleges that non-moving Defendants Sussman Bleier, Ashley Jungreisz, and Solomon Levy also initiated chargebacks that were less than $75,000. (*See* Am. Compl. ¶ 138 (Sussman Bleier, $56,500), ¶ 147 (Asher Jungreisz, $36,100), ¶ 156 (Solomon Levy, $4,000).) Because the Court finds that Plaintiff's claims are aggregable, the Court notes that it also has subject matter jurisdiction over the claims against these Defendants. *See Tronox Inc. v. Kerr-McGee Corp. (In re Tronox Inc.)*, 855 F.3d 84, 95 (2d Cir. 2017) ("[F]ederal courts have an 'independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*.'" (quoting *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006))).

and other regulatory requirements," and thus the economic injury Plaintiff suffered "was felt in Minnesota," where U.S. Bank is headquartered and where the statute of limitations for fraud and unjust enrichment claims is six years, (Pl.'s Opp'n 9–10); and (2) "if the Court decides to apply the Georgia statute of limitations and not that of Minnesota, [Plaintiff] should benefit from any applicable Georg[ia] tolling provisions," (*id.* at 11–13). Plaintiff alleges it is incorporated in Georgia and has its principal place of business in Tennessee. (Am. Compl. ¶ 2.)

"Under the law of New York, the forum state, the first step in a choice of law analysis is to determine whether an actual conflict exists between the laws of the jurisdictions involved." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012) (citing *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (1993)); *see also Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021). Where there is no conflict, "a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

"Where jurisdiction is predicated on diversity of citizenship, a federal court must apply the choice-of-law rules of the forum state." *Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015) (citing *Forest Park Pictures*, 683 F.3d at 433); s*ee also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). With respect to statutes of limitation, "New York's 'borrowing statute,' C.P.L.R. § 202, dictates that '[w]hen a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period . . . of either: (1) New York; or (2) the state where the cause of action accrued.'" *2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assur. Co.*, 717 F. App'x 35, 37 n.1 (2d Cir. 2017) (alterations in original) (citing *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998)). "New York

follows 'the traditional definition of accrual — a cause of action accrues at the time and in the place of the injury." *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) (quoting *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999)). "Where . . . the 'injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss.'" *Id.* (quoting *Glob. Fin. Corp.*, 93 N.Y.2d at 529); *see also Luv N' Care, Ltd. v. Goldberg Cohen, LLP*, 703 F. App'x 26, 28 (2d Cir. 2017) (same); *Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC*, 34 N.Y.3d 327, 335 (2019) (same). For purposes of New York's borrowing statute, a corporation resides in the location of its principal place of business. *See Luv N' Care, Ltd.*, 703 F. App'x at 28 ("Courts within the Second Circuit have consistently held that a business entity's residence is determined by its principal place of business." (quoting *Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*, No. 10-CV-5999, 2012 WL 488257, at *3 (S.D.N.Y. Feb. 14, 2012))); *id.* at 28 n.1 (noting that "[t]he New York Court of Appeals has not specifically addressed whether a corporation's residence is determined (for purposes of the borrowing statute) by its principal place of business or its state of incorporation," but that "[i]t would seem that an economic harm has greater effect on a for-profit enterprise's activities at its principal place of business").

Tennessee has a three-year statute of limitations for both fraud and unjust enrichment claims. *See UnitedHealthCare Servs., Inc. v. Team Health Holdings, Inc.*, No. 21-CV-364, 2022 WL 1481171, at *4 (E.D. Tenn. May 10, 2022) ("The statute of limitations for fraud, negligent misrepresentation, and unjust enrichment in Tennessee is three years when the gravamen of the complaint sounds in fraud or misrepresentation." (citing Tenn. Code Ann. § 28-3-105)); *Precision Tracking Sols., Inc. v. Spireon, Inc.*, No. 12-CV-626, 2014 WL 3058396, at *4–5 (E.D. Tenn. July 7, 2014) (applying Tennessee's three-year statute of limitations to fraud claims and

unjust enrichment claims based on fraud). Under New York law, the statute of limitations for fraud claims is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff discovered the fraud, or could with reasonable diligence have discovered the fraud," *Zirvi v. Flatley*, 838 F. App'x 582, 586 (2d Cir. 2020) (citing N.Y. C.P.L.R. § 213(8)), and the statute of limitations for unjust enrichment claims seeking monetary damages is three years, *Lia v. Saporito*, 909 F. Supp. 2d 149, 167 (E.D.N.Y. 2012) ("In New York, . . . unjust enrichment claims seeking monetary damages are governed by the three (3)-year statute of limitations under Section 214(3) of the [N.Y. C.P.L.R.].").

Because Tennessee's three-year statute of limitation for fraud claims is shorter than New York's six-year statute of limitation, the Court applies Tennessee's statute of limitation to Plaintiff's fraud claims. Because Tennessee and New York have the same three-year statute of limitation for unjust enrichment claims, there is no choice-of-law issue with respect to these claims. Plaintiff filed the Amended Complaint naming the individual Defendants in this action on July 16, 2021. (Am. Compl.) Under Tennessee's three-year statutes of limitation, any claims that accrued before July 16, 2018, are time barred. The latest chargeback alleged in the Amended Complaint is dated February 5, 2016, and Plaintiff alleges it was damaged immediately upon the initiation of each chargeback. Because the latest chargeback occurred more than two years after Tennessee's applicable three-year statutes of limitations expired, Plaintiff's claims are time barred.[5]

---

[5] Georgia has a four-year statute of limitations for both fraud and unjust enrichment claims. *See Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 494–95 (11th Cir. 2009) ("[A] four year statute of limitations applies to fraud claims." (citing Ga. Code. Ann. § 9–3–31)); *Raak Techs., Inc. v. Marx CryptoTech, LP*, No. 15-CV-4019, 2016 WL 9451440, at *4 (N.D. Ga. May 2, 2016) ("The plaintiff's unjust enrichment claim is subject to a four-year statute of limitations, O.C.G.A. § 9–3–26."); *Majeed v. Randall*, 632 S.E.2d 413,

Plaintiff argues that Minnesota's six-year statutes of limitation apply because that is where Plaintiff's parent company, U.S. Bank, is headquartered and Plaintiff's financials are "rolled up" into U.S. Bank's and reported by U.S. Bank.  (Pl.'s Opp'n 10.)  However, Plaintiff cites no authority for the proposition that it may avail itself of the statute of limitations of the state in which its parent corporation is located, (Defs.' Reply 4–5), and at least one court has declined to accept a similar argument.[6]  *See, e.g.*, *IKB Int'l S.A. v. Morgan Stanley*, No. 653964/2012, 2014 WL 5471650, at *3–4 (N.Y. Sup. 2014) (determining that location of parent corporation is not the location of injury where the plaintiff argued its losses "flowed" to its parent and parent and subsidiary were "closely financially intertwined" where, among other things, the plaintiff did not claim or demonstrate that it "was not a separate entity with its own losses"), *aff'd*, 36 N.Y.S.3d 452 (App. Div. 2016).

Accordingly, Plaintiff's fraud and unjust enrichment claims are time barred.[7]

### d.  **Plaintiff fails to state a claim for conspiracy**

Defendants argue that the Court must dismiss Plaintiff's conspiracy claim "because there is no independent claim for conspiracy under New York law, and in any event, the fraud claim on which the conspiracy claim is premised fails."  (Defs.' Mem. 24.)

---

416 (Ga. Ct. App. 2006) ("The statute of limitation applicable to fraud is the four-year statute established in OCGA § 9–3–31.").  Therefore, Plaintiff's claims are also time barred under Georgia's statutes of limitations.  Because the Court finds that Tennessee's statutes of limitation apply to Plaintiff's claims, the Court declines to address Plaintiff's argument in the alternative that the Georgia statute should be tolled.

[6] In addition, as noted above, under New York law, the applicable statute of limitations for unjust enrichment claims seeking monetary relief is three years, not six, and therefore even if the Court applied Minnesota's statute, Plaintiff's unjust enrichment claims would be barred under the applicable New York statute.

[7] Because the Court finds that Plaintiff's claims are time barred, it declines to address Defendants' arguments in the alternative that Plaintiff fails to state these claims.

Plaintiff acknowledges that a "claim of conspiracy cannot stand alone and must be dismissed *if* the underlying independent tort has not been adequately pleaded" but argues that it has adequately pleaded its fraud claims and thus "the Court should not dismiss the civil conspiracy claim." (Pl.'s Opp'n 25.)

"New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). "While a plaintiff may allege, in a claim of fraud or other tort, that parties conspired, the conspiracy to commit a fraud or tort is not, of itself, a cause of action." *Hoeffner v. Orrick, Herrington & Sutcliffe LLP*, 924 N.Y.S.2d 376, 377 (App. Div. 2011).

Because Plaintiff's fraud claims are time barred and a civil conspiracy claim is not an independent cause of action, the Court dismisses Plaintiff's conspiracy claim.

e. **Leave to amend**

Plaintiff requests "the opportunity to move to file an amended complaint pursuant to Rule 15" if the Court "perceives any deficiencies in the Amended Complaint." (Pl.'s Opp'n 25 n.2.) Defendants have not responded to this request.

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (citation omitted) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also Kainz v. Bernstein*, 841 F. App'x 249, 253 (2d Cir. 2020) (noting that leave to amend should be freely given).

Because Plaintiff's fraud and unjust enrichment claims are time barred and Plaintiff's

civil conspiracy claim cannot stand alone, the Court denies Plaintiff leave to amend as futile.

### III. Conclusion

For the reasons stated above, the Court grants the Moving Defendants' motion and dismisses Plaintiff's fraud and unjust enrichment claims against them as time barred and Plaintiff's civil conspiracy claim against them for failure to state a claim.

Dated: September 30, 2022
      Brooklyn, New York

SO ORDERED:

    /s/ MKB
MARGO K. BRODIE
United States District Judge